DREW, Justice.
Isidor Bronstein and his wife, Anna Bronstein, filed their bill for declaratory decree in the lower court on November Í9, 1948, against Margaret Bronstein (their daughter-in-law) and Harold Bronstein (their minor grandson). The bill alleged that during his lifetime and prior to his marriage Abe Bronstein, their son, conveyed to the plaintiffs certain lands in Volusia County; that Abe later married Margaret and they had a child, Harold; that plaintiffs have had possession of the property since it was conveyed to them; that Abe died September 15, 1946, leaving as his sole heirs his wife, Margaret and son, Harold; that Margaret and Harold are *273 asserting an interest in the real estate, “claiming that said deed did not convey the above real estate to plaintiffs as an estate by the entirety but that said deed only gave the grantees therein a life estate * * * during their joint lives and during the life of the survivor of said grantees.” Plaintiffs prayed that a guardian be appointed for the minor; that the rights of the parties be determined and for other relief. A copy of the deed was attached to and made a part of the complaint, and the following are pertinent portions thereof:
“This indenture, Made this 25th day of September, A.D. 1940 between Abe Bronstein, a single man, of the County of Volusia, in the State of Florida, party of the first part, and Isidor Bronstein and Anna Bronstein, husband and wife, in an estate by the entirety, whose permanent address is Daytona Beach of the County of Volu-sia, in the State of Florida, parties of the second part,
“Witnesseth, That the said party of the first part, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations, to him in hand paid by the said parties of the second part, the receipt whereof is. hereby acknowledged, has granted, bargained and sold to the said parties of the second part, their heirs and assigns forever, the following described land, situated lying and being in the County of Volusia, State of Florida, to-wit:
“Lot No. 8, Braddock Park, according to' and as shown on the map of said subdivision on file in the office of the Clerk of the Circuit Court of Volusia County, Florida, in Map Book 5, page 183, and subj ect to existing restrictions that run with the land.
“Subject to mortgage held-by First National Bank at Orlando, and all outstanding taxes.
“To have and to hold the same unto the said parties of the second part, or the survivor of either of them, during the remainder of the lives of the said parties of the second part.
“And the said party of the first part does hereby fully warrant the title to said land, and will defend the same against the unlawful claims of all persons whomsoever.”
The instrument was correctly executed, acknowledged and recorded.
The defendants appeared in due course, by their solicitors- (no guardian-having been •appointed to represent the minor’s interest as prayed) and filed a motion to dismiss, which was overruled by the lower court on February 17, 1951. This order allowed the defendants twenty days to answer. Certio-rari was taken on this order and denied without comment. 60 So.2d 296.
On denial of certiorari the record shows that a written application was promptly made to the lower court by Margaret Bron-stein for the appointment of a guardian ad litem to represent the minor’s interest and that said application was noticed for hearing before the lower court on April 28, 1952. At this hearing Margaret Bron-stein orally moved the court for leave to file an answer. The next action, according to the record, was the entry of a “Declaratory Final Decree” on May 15th, wherein both of the foregoing motions were denied and the subject property was decreed to be owned in fee simple by Isidor and Anna Bronstein as an estate by the entireties; that from the suggestion of death filed in said cause Isidor was deceased, and Anna was therefore decreed to be the owner of said lands in fee simple. Two weeks after the decree was pronounced but before it was filed, Anna died and a suggestion of her death was filed in said cause, whereupon an administrator ad litem was appointed for her.
Margaret and Harold have appealed from the final decree. They assign six errors. These assignments present three principal questions for our consideration, viz.: (1) the failure of the court to appoint a guardian ad litem for the minor; (2) the entry of the final decree without affording appellants an opportunity to answer and, finally (3) the decree holding that the deed created an estate by the entireties instead of a life estate in the grantees.
*274 It is apparent from the two records here that while the case was pending in this Court on the petition for certiorari, no action was taken by either party or the Court below in the lower Court. It is true that no stay was obtained in the lower Court as authorized by our Rule 35(f), 30 F.S.A., but there was a stay in fact by counsel for all the parties, who were busy litigating the case here.
The record does not indicate—-nor can we understand—why, when prompt application was made to the lower Court for leave to file an answer, such was refused and a final decree entered. Equity Rule 33 (a), 31 F.S.A., provides that “If the court denies the motion [to dismiss] * * * the responsive pleading shall be served within ten days after notice of the court’s action”. The ten day period in that rule prevails in the absence of a contrary order of the court, and in this case the court allowed twenty days. The lower court had no right—particularly when the interest of a minor was involved—to assume that there was no possible defense or rights that could be asserted by the defendants. So far as the record shows, Abe Bronstein could have been under age or a lunatic at the time the deed was executed; the deed may have been a forgery, may have been obtained by duress or there may be documents in existence which would affect its legal status. The assertion of defenses-—-if they exist— are rights that are entitled to protection in the courts.
The right of a defendant to present whatever defenses may be available, under appropriate rules, of course, is just as broad as the right of a plaintiff to present his cause in a complaint. It may be that when the defenses are actually presented by an answer they will constitute no legal defense at all, but that can also be said about a complaint. Yet, no one could argue that a court could lawfully refuse to allow a plaintiff to file his complaint in the Clerk’s office because in its opinion it presented no cause of action. Both the plaintiff and defendant have a right—under reasonable regulations—to have a record of the fact that no cause of action or defense, as the case may be, is presented.
In Dennard v. Monroe, 66 Fla. 254, 63 So. 428, we said, in speaking on this general subject:
“The demurrer was not wholly irrelevant or frivolous- so as to justify striking it as being frivolous or improper or violative of any rule or order of the court. It was expressly ‘overruled’ by the court, which is the proper ruling where a demurrer is insufficient in law.
“The express provision of the rule that, upon overruling a demurrer to a bill of complaint in equity, ‘the defendant shall be required to answer the bill,’ confers a substantial right as well as imposes a specific duty upon the defendant, and a decree pro confess© should not be entered until there is a default in answering under the rule or as required by a special order made in the premises. Under the rule the right of the defendant to answer the bill of complaint is not a mere formal or technical right, but it confers authority to answer the bill as provided in the rule, which is a substantial and duly prescribed right that cannot be lawfully taken from a defendant except by due course of procedure.”
The original complaint prayed for the appointment of a guardian ad litem for the minor child as provided by Section 744.12, F.S.A. This statute provides that “Whenever an incompetent is -made a party to any litigation * * * and has no guardian, or when his interest is adverse to that of his guardian” such court shall appoint a guardian ad litem for such incompetent. Section 744.03 defines a guardian as “one to whom the law has entrusted the custody and control of the person or of the property, or of both, of an incompetent.” Section 744.13 provides that the mother and father jointly are the natural guardians of their own children, and if one dies, the guardianship passes to the survivor. Under the facts in this case the guardian’s interest is not adverse to the minor’s interest, so there remains no reason to appoint a guardian ad litem and the lower court was correct in so ruling.
*275 For the reasons pointed out, we think the ends of justice require a reversal of the decree. Accordingly, the decree of the lower court is reversed with instructions to fix a time for the filing of answers by the defendants and for further proceedings consistent with this opinion.
Because of this view, the decision on the third question is obviously deferred until the Chancellor decides the case after the filing of answers.
Reversed in part and affirmed in part.
TERRELL, Acting Chief Justice, and THOMAS and HOBSON, JJ., concur.