83 So.2d 699 (1955)
Margaret BRONSTEIN and Harold Bronstein, a Minor, and Margaret BRONSTEIN, as the mother and natural guardian of Harold BRONSTEIN, a Minor, Petitioners,
v.
Jennie BRONSTEIN and John S. Byington, as Guardian Ad Litem for Eva Bronstein, Respondents,
Sara Bronstein Cortell, Ida Bronstein Markovitz and Ruby Bronstein Prakin, Respondents (Intervenors).
Supreme Court of Florida. Special Division B.
November 16, 1955.
Rehearing Denied December 7, 1955.
Horn & Ossinsky and Joseph D. Krol, Daytona Beach, for petitioners.
Paul E. Raymond and Raymond, Wilson & Karl, Daytona Beach, for respondents.
THORNAL, Justice.
Petitioners seek a writ of certiorari directed to an interlocutory order of the Chancellor in a declaratory judgment proceeding praying for a determination of the rights of the parties under a deed. This case has been before this Court on two previous occasions. See 60 So.2d 296, and 64 So.2d 272.
The factual background is outlined in our opinion in 64 So.2d 272. In addition to the facts there recited, the present *700 record reveals that subsequent to that opinion, there now appears among the public records of Volusia County, Florida, a purported deed from Anna Bronstein conveying her interest to the respondent, Jennie Bronstein. The various parties to this cause are the heirs at law of the original grantor and of the grantees in the deed dated September 25, 1940. The dispute revolves around the construction of that deed. The deed in question was set out verbatim in our opinion in 64 So.2d 272. The pertinent provisions are that it is an indenture "between A. Bronstein, a single man * * party of the first part, and Isador Bronstein and Anna Bronstein, husband and wife, in an estate by the entirety, * * *." Also in the granting part it states that for valuable consideration A. Bronstein "has granted, bargained and sold to the said parties of the second part [Isidor and Anna Bronstein] their heirs and assigns forever * * *." After the description of the land the deed further contains the following so-called habendum:
"to have and to hold the same unto the said parties of the second part or the survivor of either of them during the remainder of the lives of the said parties of the second part."
Relying on the common-law rule of construction to the effect that in the event of a conflict between the granting clause and the habendum the former will always control, the Chancellor entered an interlocutory order holding that the deed in question conveyed a fee simple estate to Isidor and Anna Bronstein. By his order he held for further consideration the question of the validity of the subsequent deed from Anna to Jennie Bronstein. In the absence of any other circumstances, the effect of this order obviously would be that the property descended to the heirs at law of Anna Bronstein or to her grantees rather than to the heirs at law of A. Bronstein, the original grantor. Petitioners, who are the heirs of A. Bronstein, the grantor, challenge the order contending that under existing statutes and in the light of modern decisions, we should examine the deed in all of its four corners in order to determine the intent of the grantor and that when this is done it is obvious that the grantor in the original deed intended to convey to Isidor and Anna merely a life estate rather than a fee; hence, upon the death of the surviving life tenant, title reverted to the heirs of the original grantor, to wit, the petitioners.
Although it should be recognized that the authorities in other jurisdictions remain somewhat in conflict, we are inclined to the view that under the better-reasoned opinions as well as in the light of our own statutes, we should no longer follow the arbitrary rule of the common law which recognized the language of the granting clause to the exclusion of all other language in the deed in resolving a problem of this nature.
We are of the view and so hold that for purposes of construction of this deed it is necessary and proper to examine the entire instrument in an effort to effectuate the intent of the grantor. The problem arises out of the requirement of the common law that the use of the word "heirs" following the name of the grantee was indispensable to create a grant of a fee simple title and further that when used, the word "heirs" necessarily resulted in the grant of a fee simple title to the exclusion of any other language in the conveyance.
In Florida by the passage of F.S. § 689.10, F.S.A., our Legislature eliminated the necessity for the use of the word "heirs" as an indispensable element in the granting of a fee simple estate. This statute reads as follows:
"Where any real estate has heretofore been conveyed or granted or shall hereafter be conveyed or granted without there being used in the said deed or conveyance or grant any words of limitation, such as heirs or successors, or similar words, such conveyance or grant, whether heretofore made or hereafter made, shall be construed to vest the fee simple title or other whole estate or interest which the grantor had power to dispose of at that time *701 in the real estate conveyed or granted, unless a contrary intention shall appear in the deed, conveyance or grant."
An examination of the cited statute will show that the word "heirs" is no longer a word of art in describing a conveyance in fee simple. The effect of the statute in circumstances such as those at bar is that the use of the word "heirs" in a conveyance is actually surplusage because it adds nothing to the names of the grantees.
Therefore, in considering the deed in this case we can eliminate the word "heirs" for the reason that under the foregoing statute it adds nothing to the grant.
Referring again to the statute, it will be noted that a grant to a grantee merely naming him without the use of any words of limitation will convey the fee simple title or the whole estate of the grantor "unless a contrary intention shall appear in the deed, conveyance or grant". Obviously, if a contrary intention does appear in the deed then the fee simple character of the title conveyed is limited and controlled by the expressed contrary intention of the grantor. We are thereupon relegated to an examination of the entire instrument involved in order to determine the quality or quantity of the estate conveyed.
Professor Thompson in his authoritative work on Real Property, Perm. Ed., Vol. 7, Sec. 3528, summarizes the rule as follows:
"Control of habendum where words of inheritance declared unnecessary by statute. 
"In some states it has been declared that the habendum controls the granting clause when these clauses are repugnant, since the statute declares words of inheritance unnecessary. Although by granting clause a conveyance in fee simple is implied, but the habendum is repugnant to such an inference, the habendum will be given controlling effect. Thus, where a father, `for and in consideration of natural affection' for his daughter and son, conveyed certain land, habendum to them and their children forever, there being nothing in the deed indicating that the grantor used the word `children' in the sense of `heirs', it was held that, as the habendum controls the granting clause when they are repugnant, and as the statutory provision that every estate created by deed `without words of inheritance' shall be deemed a fee simple applies only where a different purpose does not appear `by express words or necessary inference,' the daughter and son took only a life estate, remainder to their children. In states where an implied estate in fee simple is created in the premises, a specific estate expressly created by the habendum will be the kind of estate conveyed.

"It has also been said that the habendum should control because it is the last expression of the grantor." (Emphasis ours.)
We ourselves long ago recognized that in view of the statute above quoted the use of the word "heirs" in a conveyance is no longer essential to the granting of a fee. This was recognized in our decision in Reid v. Barry, 93 Fla. 849, at page 863, 112 So. 846, at page 852, from which we quote:
"* * * Most of the states by statute, and some of them by judicial construction, have long since departed from this rule, and the rule generally adopted has been to consider the language of the entire instrument in order to discover the intent of the grantor, both as to the character of estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent. * * *"
See also 16 Am.Jur., "Deeds" Secs. 237, 238.
By applying the foregoing rules to the deed in the case before us, we, therefore, hold that by reading the deed in its entirety and giving effect to the restrictive *702 language of the instrument as a whole, it is clear that the grantor intended to convey to the grantees therein named a life estate to continue for the period of the joint lives of the grantees and the life of the survivor of them and that the life estate terminated upon the death of the surviving grantee and the title reverted to the grantor, his heirs or assigns.
The prayer of the petition is granted, the order appealed from is quashed, and the cause is remanded for further proceedings consistent with this opinion.
DREW, C.J., and THOMAS and O'CONNELL, JJ., concur.